UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 23-10284-RGS

UNITED STATES OF AMERICA

v.

STEPHEN M. MARSDEN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

January 3, 2026

STEARNS, D.J.

Defendant Stephen Marsden, who is charged with federal cocaine-related and firearms offenses, seeks to suppress a search of his apartment at #901, 100 Cove Way, Quincy, Massachusetts, as well as the seizure of incriminating items found by police in his home. As the searches and seizures at issue were conducted pursuant to an anticipatory warrant,[1] the

---

[1] An anticipatory search warrant is one "based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 LaFave, *Search and Seizure*, § 3.7(c), at 485 (2020). Anticipatory warrants are lawful under the Fourth Amendment. *United States v. Grubbs*, 547 U.S. 90, 94-95 (2006). "[F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' . . . but also that there is probable cause to believe the triggering condition *will occur*." *Grubbs, supra*, at 96-97. Marsden does not take issue with the officers' use of an anticipatory warrant or their compliance with its triggering precondition, the search of package #6 confirming that it in fact contained (in which in any event he could not claim a viable expectation of privacy).

court's review is confined to the facts set out in the warrant and its supporting affidavit and any reasonable inferences that can be drawn from the facts. *See United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999) (the inquiry begins and ends with the four corners of the affidavit). In recognition of this preference, courts reviewing warrants "will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant.'" *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983). After-the-fact scrutiny of the sufficiency of the supporting affidavit does not take the form of *de novo* review; rather as a matter of law, the magistrate's "'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983), quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969), *see also Beck v. Ohio*, 379 U.S. 89, 96 (1964) (same, arrest warrants). Consequently, no evidentiary hearing in this case is required.

FACTUAL BASIS OF THE WARRANT

The essential facts disclosed in the warrant are as follows. In March of 2023, a joint drug investigation task force comprised of the Massachusetts State Police (MSP) and the United States Postal Inspection Service, began

2

investigating packages being shipped from anonymous persons in Puerto Rico to fictitious persons allegedly residing at apartments #303 and #404 in a multi-unit apartment building at Cove Way in Quincy.  The delivery of six such packages was traced by the officers to the reception area (alcove) of the apartment complex.  The first five packages were delivered without being searched.  Police surveillance established that all five of the packages were retrieved from the alcove by Marsden, who resided with his wife in apartment #901 of the complex.  On four of the five occasions, Marsden retrieved the packages from the alcove and then retreated towards his apartment in the interior of the building.  The suspicious nature of the packages and the even more telling behavior of Marsden after taking them into possession is set out in meticulous detail in the supporting affidavit by MSP Trooper Kevin Tufts, a well-trained and experienced narcotics detective.

The sixth package, which brings us to the search, arrived at a Quincy-area postal facility on May 23, 2023, in transit to Cove Way.  The package exhibited the same indicia of suspicion as its five predecessors and weighed some 7.8 lbs. (3 kilograms).  The investigating officers summoned a drug-sniffing dog, Charlie, and his experienced handler.  Charlie, who is certified as a drug-detection canine, with hundreds of hours of training and the

certificates to prove it,[2] has in his eight years in law enforcement been responsible for the detection of over 100,000 grams of cocaine with a street value of over $2,000,000. Charlie alerted immediately to package #6, supporting the investigators' belief that the package contained cocaine.

At that point, officers sought and obtained the anticipatory warrant from a Quincy District Court Clerk-Magistrate authorizing the search of package #6 and conditionally Marsden's apartment # 901 at Cove Way. The warrant set out two triggering conditions precedent. First, that the package when opened be confirmed by the officers to contain cocaine. The second was that Marsden be seen retrieving the package upon its arrival at Cove Way. If these conditions were met, the warrant authorized the seizure *inter alia* of "cocaine and other illegal narcotics, any instrument or paraphernalia used in the cutting, procuring, weighing, packaging, and/or distribution of

---

[2] Drug-sniffing dogs are not devious creatures whose reliability must be verified by a heightened showing of probable cause. *Florida v. Harris*, 568 U.S. 237, 244 (2013) (faulting the Florida Supreme Court for flouting the traditionally fluid test of probable cause by creating a strict evidentiary checklist of dog-sniffing reliability "whose every item the State must tick off"). "No more for dogs than for human informants is such an inflexible checklist the way to prove reliability, and thus establish probable cause." *Id*., at 245. Justice Kagan, writing for a unanimous Court in *Harris* was not herself short of suggestions regarding factors that a court might weigh in measuring a dog's reliability – for example, the dog's satisfactory performance or certification in a drug detection training program and the dog's history of field performance. *Id*. at 246-247.

controlled substances, paraphernalia, implements, and other articles necessary for the business of distributing controlled substances." Dkt#75-2 at 1. The warrant also authorized the officers to seize "any additional instrument or equipment, electronic or otherwise, used to further the sale of controlled substances . . . ." *Id.* Package #6 was delivered and the warrant executed on May 26, 2023.

## ADDITIONAL RULINGS OF LAW

Marsden's objection to the warrant is two-fold. First, he contends that there was no basis on which the Clerk-Magistrate could have inferred that evidence of drug activity would be found in his apartment (#901), as opposed to apartments #303 and #404, which were used as drop sites (that is, he alleges an insufficient nexus); and (2) that the warrant did not specifically authorize the seizure of firearms from his apartment, or alternatively, that there was no basis to believe that firearms are implements used in the conduct of the drug trade (that is, overbreadth).

A "nexus between the items to be seized and the place to be searched need not be based on direct observation . . . [and] may be found in the 'type of crime, the nature of the missing items, the extent of the suspects' opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property'" or other

contraband. *Commonwealth v. Cinelli,* 389 Mass. 197, 213 (1983); *see also United States v. Ribero*, 397 F.3d 43, 49 (2006) (same). Significant authority supports the inference that a successful drug dealer is likely to keep drugs, proceeds, and records of drug dealing in his home. *See* 2 LaFave, *Search and Seizure*, § 3.7(d) (2020); *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999); *United States v. Dixon,* 787 F.3d 55, 60 (1st Cir. 2015); *see also United States v. Whitner*, 219 F.3d 289, 297-299 (3d Cir. 2000) (collecting cases). The inference that records and paraphernalia will be found in a defendant's home is particularly compelling when a large-scale, multi-kilo dealer is using his home as a base of operations, and as was the case with Marsden, masquerading phantom destinations as diversionary "drop-off" sites for the delivery of his drug supply. The officers' surveillance of Cove Way never detected any one of the pseudonymous occupants of apartments #303 or #404 to be involved with the retrieval or further delivery of the six suspicious packages.

There is also no tenable support for Marsden's objection that the police exceeded the scope of the search authorized by the Clerk-Magistrate by extending it to the bedroom in the apartment and his (open) safe. If there is probable cause to believe that criminal activity is afoot in one room of a household, a warrant to search the entire dwelling and its appurtenances is

not overly broad.  2 LaFave, *Search and Seizure*, § 4.10 (a) (2020).  *See also United States v. Ferreras*, 192 F.3d 5, 10-11 (1st Cir. 1999) (attic); *United States v. Canestri*, 518 F.2d 269, 273-274 (2d Cir. 1975) (locked basement storeroom); *United States v. Fagan*, 577 F.3d 10, 14 (1st Cir. 2009) (storage closet opening onto a landing eight feet from the front door of defendant's apartment).  The intensity of a search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982).  *See also Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (same).   Any unlocked or locked container on the premises that could reasonably conceal an item described in the warrant may be opened and searched.  *See United States v. Giwa,* 831 F.2d 538, 543-544 (5th Cir. 1987); *United States v. Wright*, 704 F.2d 420, 422 (8th Cir. 1983) (per curium) (officers searching for drugs   lawfully opened a locked safe); *United States v. Criswell*, 696 F.2d 636, 640 (8th Cir. 1983) (refrigerator freezer compartment); *United States v. Gray*, 814 F.2d 49, 51 (1st Cir. 1987) (pockets of a jacket found on the premises); *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir. 1973) (briefcase).  Officers in this case were well justified in searching Marsden's open safe (where the firearms were found) and would have, if necessary, been justified in breaking its lock.  Finally, as a matter of law, the warrant's authorization of the seizure

of "implements, and other articles necessary for the business of distributing controlled substances" is reasonably interpreted as including firearms found in proximity to evidence of drug-dealing.  It is well-recognized by courts that firearms are standard tools of the drug trade. *See United States v. Walters*, 904 F.2d 765, 769 (1st Cir. 1990); *United States v. Sarda-Villa*, 760 F.2d 1232, 1234 n.1 (11th Cir. 1985); *United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986).[3]

### ORDER

For the foregoing reasons, the motion to suppress is DENIED.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[3] The officers would also have been justified in seizing the firearms under the aptly termed "plain view" doctrine.  *See United States v. Aguirre*, 839 F.2d 854, 858-859 (1st Cir. 1988); *United States v. Robles,* 45 F.3d 1, 6 (1st Cir. 1995).